CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
LINDSAY N. ROGINSKI, ESQ.
Nevada Bar No. 16616
**CHRISTIAN MORRIS TRIAL ATTORNEYS**
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
T: (702) 434-8282
F: (702) 434-1488
Christian@CMTAlaw.com
Sarah@CMTAlaw.com
Lindsay@CMTAlaw.com
*Attorneys for Plaintiffs*
-And-
PENNY L. BARRICK, ESQ.
Ohio Bar No. 74110 (*Pro Hac Vice*)
**BABIN LAW, LLC**
10 West Broad Street, Suite 900
Columbus, Ohio 43215
T: (614) 761-8800
penny.barrick@babinlaws.com
*Attorneys for Plaintiffs*

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| M.B., individually; J.D., individually, D.S., individually,<br><br>Plaintiffs,<br><br>vs.<br><br>RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC., PARADISE II LIMITED LIABILITY COMPANY; DOES 1 through 10; ROE CORPORATIONS 13 through 20; and ABC LIMITED LIABILITY COMPANIES 21 through 30,<br><br>Defendants. | CASE NO: 2:25-cv-00797-CDS-BNW<br><br><br><br>**STIPULATION AND PROPOSED ORDER FOR LEAVE TO FILE SECOND AMENDED COMPLAINT AND SET BRIEFING SCHEDULE** |

1

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

Plaintiffs, M.B., J.D., and D.S., ("Plaintiffs"), by and through their counsel of record, Christian M. Morris, Esq., Sarah E. DiSalvo, Esq. and Lindsay N. Roginski, Esq.,; Defendants, RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC., ("Defendant Red Roof"), by and through their counsel of record, Amanda Villalobos, Esq. and Nicholas Janizeh, Esq. of the law firm TUCKER ELLIS, LLC; and Defendants Paradise II, LLC, ("Defendant Paradise"), by and through their counsel of record, Whit Selert, Esq., of the law firm O'HAGAN MEYER, PLLC, hereby stipulate and agree as follows:

1.      Plaintiff seeks leave to file a Second Amended Complaint, pursuant to Federal Rule of Civil Procedure 15(a)(2), for the purpose of amending the parties as follows:

    a. To remove M.B. as a Plaintiff in this litigation matter.

2.      The Parties agree that Plaintiff may file the proposed Second Amended Complaint, attached hereto as **Exhibit 1**.

3.      This stipulation is submitted pursuant to Federal Rule of Civil Procedure 15(a)(2), which provides that a party may amend its pleading with the opposing party's written consent or the court's leave, and that "leave shall be freely given when justice so requires."

4.      The parties further stipulate and request that the Court set the following briefing schedule:

    a. Defendants' responses to the Second Amended Complaint shall be due within fourteen (14) days of the filing of the Second Amended Complaint.

    b. Plaintiff shall file any opposition to a Defendant's motion within fourteen (14) days after service of the motion;

    c. Any reply in support of a motion filed by a Defendant shall be due within fourteen (14) days after service of Plaintiff's opposition.

5.  This stipulation is made in good faith and not for the purpose of delay.

IT IS SO ORDERED.

DATED this 10th day of February 2026.

CHRISTIAN MORRIS TRIAL ATTORNEYS

*/s/ Sarah E. DiSalvo*
_____
CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO., ESQ.
Nevada Bar 16398
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
*Attorneys for Plaintiffs*


-AND-

PENNY L. BARRICK, ESQ.
Ohio State Bar No. 74110 (*Pro Hac Vice)*
BABIN LAW, LLC
10 W. Broad St., Suite 900
Columbus, Ohio 43215
*Attorneys for Plaintiffs*



DATED this 10th day of February 2026.

O'HAGAN MEYER, PLLC

*/s/ Whit Selert*
_____
WHIT SELERT, ESQ.
Nevada Bar No. 5492
300 S. 4th St., Suite 1250
Las Vegas, Nevada 89101
*Attorneys for Defendants Paradise II, LLC*

DATED this 10th day of February 2026.

TUCKER ELLIS, LLP

*/s/ Amanda Villalobos*
_____
AMANDA VILLALOBOS, ESQ.
California Bar No. 262176 *(Pro Hac Vice)*
NICHOLAS JANIZEH, ESQ.
California Bar No. 307816 (*Pro Hac Vice*)
515 S. Flower St, 42nd Floor
Los Angeles, California 90071
*Attorneys for Defendants Red Roof
Franchising, Inc. & Red Roof Inns, Inc.*


-AND-

REBECCA MASTRANGELO, ESQ.
Nevada State Bar No. 5417
ROGERS, MASTRANGELO
CARVALHO & MITCHELL
700 S. Third St.
Las Vegas, Nevada 89101
*Local Counsel for Defendants Red Roof
Franchising Inc. & Red Roof Inns, Inc.*

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

**ORDER**

IT IS SO ORDERED.


DATED:  February 12, 2026

_____
UNITED STATES MAGISTRATE JUDGE

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

4

 **Outlook**

---

## Re: M.B., ET AL v. Red Roof Inns, et al

---

**From** Villalobos, Amanda <Amanda.Villalobos@tuckerellis.com>

**Date** Tue 2026-02-10 10:02

**To** Nicole DuBois <NicoleD@cmtalaw.com>

**Cc** Kathryn McCallion <kmccallion@ohaganmeyer.com>; Rebecca Mastrangelo <rmastrangelo@rmcmlaw.com>; Sarah DiSalvo <Sarah@cmtalaw.com>; Lindsay Roginski <Lindsay@cmtalaw.com>; Janizeh, Nicholas V. <Nicholas.Janizeh@tuckerellis.com>; Ashley Luto <ashley@cmtalaw.com>; Penny Barrick <penny.barrick@babinlaws.com>; Whitney Selert <wselert@ohaganmeyer.com>

Yes, thanks!

Sent from my iPhone

> On Feb 10, 2026, at 11:59 AM, Nicole DuBois <NicoleD@cmtalaw.com> wrote:

**<<< EXTERNAL EMAIL >>>**

---

Thank you, Ms. McCallion, we will make those changes.

Ms. Villalobos, do we have your permission to e-sign?

Best regards,
Nicole DuBois
Paralegal

*"Kindness is the culture. Justice is the purpose."*
<Outlook-v4wyl4oi.png>
**2250 Corporate Circle Suite 390**
**Henderson NV 89074**
**Direct Tel: 702-763-6904**
**Direct Fax: 702-728-2565**
**Office Tel: 702-434-8282**
Nicoled@cmtalaw.com
**CMTrialAttorneys.com**
CONFIDENTIALITY NOTICE: This email and any attachments are for the exclusive and confidential use of the intended recipient. If you are not the intended recipient, please do not read, distribute or take action in reliance upon this message. If you have received this in error,

please notify us immediately by return email and promptly delete this message and its attachments from your computer system. We do not waive attorney-client or work product privilege by the transmission of this message.

---

**From:** Kathryn McCallion <kmccallion@ohaganmeyer.com>
**Sent:** Monday, February 9, 2026 07:59
**To:** Nicole DuBois <NicoleD@cmtalaw.com>; Villalobos, Amanda <Amanda.Villalobos@tuckerellis.com>; Rebecca Mastrangelo <rmastrangelo@rmcmlaw.com>
**Cc:** Sarah DiSalvo <Sarah@cmtalaw.com>; Lindsay Roginski <Lindsay@cmtalaw.com>; Janizeh, Nicholas V. <Nicholas.Janizeh@tuckerellis.com>; Ashley Luto <ashley@cmtalaw.com>; Penny Barrick <penny.barrick@babinlaws.com>; Whitney Selert <wselert@ohaganmeyer.com>
**Subject:** RE: M.B., ET AL v. Red Roof Inns, et al

Good morning,

Please remove John Orr, Esq. and my name from the Stipulation and keep Whit Selert, Esq. as the attorney of record. No other changes are needed on our end. You have authority to e-sign on behalf of Whit Selert, Esq.

Thank you,

Kathryn McCallion
Associate Attorney
1717 Arch Street | Suite 3910 | Philadelphia | PA | 19103
PH 215.461.3300 | DIR 215.461.3352| FAX 215.461.3311
<image002.jpg>


**INFORMATION IN THIS TRANSMITTAL IS CONFIDENTIAL AND INTENDED ONLY FOR THE RECIPIENT LISTED ABOVE.  IF YOU ARE NEITHER THE INTENDED RECIPIENT NOR A PERSON RESPONSIBLE FOR DELIVERING THIS TRANSMITTAL TO THE INTENDED RECIPIENT, YOU ARE HEREBY NOTIFIED THAT ANY DISTRIBUTION OR COPYING OF THIS TRANSMITTAL IS PROHIBITED.  IF YOU RECEIVED THIS TRANSMITTAL IN ERROR, PLEASE IMMEDIATELY NOTIFY US BY TELEPHONE OR EMAIL AND IMMEDIATELY DELETE THE MESSAGE.**

---

**From:** Nicole DuBois <NicoleD@cmtalaw.com>
**Sent:** Thursday, February 5, 2026 12:31 PM
**To:** Villalobos, Amanda <Amanda.Villalobos@tuckerellis.com>; Rebecca Mastrangelo <rmastrangelo@rmcmlaw.com>; Kathryn McCallion <kmccallion@ohaganmeyer.com>
**Cc:** Sarah DiSalvo <Sarah@cmtalaw.com>; Lindsay Roginski <Lindsay@cmtalaw.com>; Janizeh, Nicholas V. <Nicholas.Janizeh@tuckerellis.com>; Ashley Luto <ashley@cmtalaw.com>; Penny Barrick <penny.barrick@babinlaws.com>; Whitney Selert <wselert@ohaganmeyer.com>
**Subject:** [EXTERNAL] Re: M.B., ET AL v. Red Roof Inns, et al

> **CAUTION:** This email originated from outside the organization.
> Do not click links or open attachments unless you are expecting them from the sender.

Good morning,

# EXHIBIT 1

2nd Amended Complaint

# EXHIBIT 1

CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
LINDSAY N. ROGINSKI, ESQ.
Nevada Bar No. 16616
**CHRISTIAN MORRIS TRIAL ATTORNEYS**
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
T: (702) 434-8282
F: (702) 434-1488
Christian@CMTAlaw.com
Sarah@CMTAlaw.com
Lindsay@CMTAlaw.com
*Attorneys for Plaintiffs*
-And-
PENNY L. BARRICK, ESQ.
Ohio Bar No. 74110 (*Pro Hac Vice*)
**BABIN LAW, LLC**
10 West Broad Street, Suite 900
Columbus, Ohio 43215
T: (614) 761-8800
penny.barrick@babinlaws.com
*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| J.D., individually, D.S., individually, | CASE NO.: 2:25-cv-00797-CDS-BNW |
| Plaintiffs, | |
| vs. | **SECOND AMENDED COMPLAINT** |
| RED ROOF INNS, INC., RED ROOF FRANCHISING, LLC., PARADISE II LIMITED LIABILITY COMPANY; DOES 1 through 10; ROE CORPORATIONS 13 through 20; and ABC LIMITED LIABILITY COMPANIES 21 through 30, | |
| Defendants. | |

COMES NOW, Plaintiffs, J.D., individually; and D.S. individually by and through their

1

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

counsel of record, Christian M. Morris, Esq., Sarah E. DiSalvo, Esq., and Lindsay N. Roginski, Esq., of the law firm CHRISTIAN MORRIS TRIAL ATTORNEYS, for their causes of action against Defendants above named, and each of them, and complain and allege as follows:

## INTRODUCTION

The Las Vegas Red Roof Inn was a notorious epicenter of sex trafficking. Defendants Red Roof Inns, Inc., Red Roof Franchising, LLC, and Paradise II Limited Liability Company (hereinafter "Defendants") exploited victims of sex trafficking, deliberately ignoring blatant signs of abuse to maximize their profits. Defendants prioritized financial gains over the lives and dignity of countless victims, creating an environment where traffickers could operate with impunity. Defendants' willful negligence and active complicity demonstrate a shocking disregard for human life, as they knowingly facilitated the systematic abuse and exploitation of vulnerable individuals for years. Plaintiffs J.D., and D.S., are two of many vulnerable individuals who were coerced into sex trafficking, forced into commercial acts, and subjected to abuse, all while Defendants turned a blind eye to their suffering. Defendants and their staff consistently ignored clear indicators and reports of sex trafficking at the Las Vegas Red Roof Inn, allowing their property to become a hub for sex trafficking, profiting from the repeated bookings and extending stays while countless lives were shattered within its walls.

## PARTIES

1.    Plaintiff J.D. is and at all times relevant hereto was a resident of Hamilton County, Ohio.

2.    Plaintiff D.S. is and at all times relevant hereto was a resident of Riverside County, California.

3.    Plaintiffs J.D. and D.S., (hereinafter "Plaintiffs"), are victims of trafficking pursuant to 22. U.S.C. § 7102(12), 22. U.S.C. § 7102(16),  22. U.S.C. § 7102(17), 18 U.S.C. § 1591(a), and 18 U.S.C. § 1595.

4.    Due to the sensitive and intimate nature of the issues, Plaintiffs J.D. and D.S., request that this Court grant a protective order pursuant to Fed. R. Civ. P. 26(c) to permit them to proceed under a pseudonym and to ensure that Defendants maintain the confidentiality of

2

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

Plaintiffs identities during this lawsuit and thereafter.[1]

5. Generally, under the Federal Rules of Civil Procedure, pleadings must state the name of all parties.[2] However, there are exceptions when the issues involved are of a sensitive and highly personal nature.[3] For good cause, the Court may issue an order to protect a party or person from annoyance, embarrassment, oppression or undue burden or expense. [4]

6. Here, granting pseudonym status and proceeding under seal is warranted because this litigation will involve the disclosure of stigmatizing sexual information, including rape. Plaintiffs J.D., and D.S., fear the stigma from their families, friends, employers, and communities if their true identities are revealed in the public record.

7. Additionally, disclosing the identities of Plaintiffs J.D. and D.S., may put their safety at risk. Victims of trafficking often face serious harm, including threats, violence, and retaliation, when they take legal action against their traffickers or those associated with them. In some cases, this danger can escalate to severe injury or even loss of life.

8. Plaintiffs J.D. and D.S., should not be compelled to disclose their identities in order to maintain their privacy and safety. Plaintiffs' privacy interests substantially outweigh the customary practice of judicial openness.[5]

9. Moreover, Defendants will not be prejudiced by Plaintiffs proceeding under pseudonyms. Plaintiffs J.D. and D.S., are willing to disclose their identities to Defendants for

---

[1] In cases where the plaintiffs have demonstrated a need for anonymity, the district court should use its powers to manage pretrial proceedings under Fed. R. Civ. P. 16(b), and to issue protective orders limiting disclosure of the party's name under Fed. R. Civ. P. 26(c), to preserve the party's anonymity to the greatest extent possible without prejudicing the opposing party's ability to litigate the case. *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1069 (9th Cir. 2000).
[2] Fed. R. Civ. P. 10(a).
[3] A district court must balance the need for anonymity against the general presumption that the parties' identities are public information and the risk of unfairness to the opposing party. *See, e.g., M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir.1998); *James v. Jacobson*, 6 F.3d at 238 (4th Cir. 1993); *Doe v. Frank*, 951 F.2d 320, 323–24 (11th Cir.1992*); Doe v. Stegall*, 653 F.2d at 186 (5th Cir.); see *also Doe v. Frank* at 323 (11th Cir. 1992) (holding that a plaintiff should be permitted to proceed anonymously in cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity).
[4] Fed. R. Civ. P. 26(c).
[5] Does I thru XXIII, 214 F.3d at 1068 (joining its 4th, 5th, 10th, and 11th sister circuits in holding that a party may preserve his or her anonymity in judicial proceedings in special circumstances when the party's need for anonymity outweighs prejudice to the opposing party and the public's interest in knowing the party's identity).

3

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

the limited purpose of investigating their claims, provided that a protective order is in place. Accordingly, Plaintiffs J.D. and D.S., simply seek redaction of their personal identifying information from the public docket and assurances that Defendants will not disclose or publish their identities due to the sensitive and intimate nature of this case. Plaintiffs J.D. and D.S., request that this Court grant a protective order pursuant to Fed. R. Civ. P. 26(c) to allow them to proceed under pseudonyms and to ensure the confidentiality of their identities both during and after this litigation, safeguarding their safety, personal lives, relationships, and future employment prospects.

10. Defendant RED ROOF INNS, INC. (hereinafter "Defendant RRI") is a foreign corporation incorporated under the laws of the State of Delaware, with its corporate headquarters and principal place of business located in Ohio, and at all times relevant was doing business in Clark County, Nevada.

11. Defendant RED ROOF FRANCHISING, LLC (hereinafter "Defendant RRF"), is a foreign limited liability acting under the laws of the State of Delaware, with its corporate headquarters and principal place of business Ohio, and at all times relevant was doing business in Clark County, Nevada.

12. Upon information and belief, Defendants RRI and RRF (hereinafter "The Red Roof Inn Defendants") purchase, own, franchise, and/or manage a network of approximately six hundred and fifty (650) hotels and motels globally.

13. Defendant PARADISE II LIMITED LIABILITY COMPANY (hereinafter "Defendant Paradise") was a limited liability company acting under the laws of the State of Nevada, and at all times relevant was doing business in Clark County, Nevada as the franchisee and operator of the Las Vegas Red Roof Inn located at 4350 Paradise Road, Las Vegas, Nevada 89169 (hereinafter "The Las Vegas Red Roof Inn").

14. Defendants RRI, RRF, Paradise (hereinafter, "Defendants"), and each of them, participated in a joint venture operating as the Las Vegas Red Roof Inn, which permanently closed at the end of 2024.

15. Upon information and belief, the Red Roof Inn Defendants maintain a pervasive

4

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

brand presence at their properties, including the Las Vegas Red Roof Inn, through prominent internal and external signage, staff uniforms, and branded in-room amenities such as pens and notepads. This comprehensive branding strategy ensures a consistent guest experience aligned with the Red Roof Inn Defendants' standards, which Defendant Paradise must follow.

16. Upon information and belief, the Red Roof Inn Defendants mandate specific vendors, suppliers, and IT systems for branded hotels, including Las Vegas Red Roof, maintaining control over operations through a consolidated network, which Defendant Paradise must follow.

17. Upon information and belief, the Red Roof Inn Defendants charge approximately 10% of gross revenue for brand usage, provide marketing and centralized booking systems, and allocate resources for monitoring brand standards and training of the Red Roof Inn Defendants' employees and the Red Roof Inn Defendants and Defendant Paradise's employees, agents, and/or staff at the Las Vegas Red Roof Inn for whom these Defendants jointly employ.

18. Upon information and belief, the Red Roof Inn Defendants retain authority to enforce standards through inspections and franchise termination, exercising significant control over employment decisions and daily operations of Defendant Paradise's Las Vegas Red Roof Inn.

19. Upon information and belief, Defendant Paradise, as the franchisee of the Las Vegas Red Roof Inn, directly oversaw its management, including:

    a. Managing business operations;

    b. Overseeing room rentals, including use of the Red Roof Inn Defendants' database of room availability and occupancy;

    c. Training and jointly employing employees and staff in accordance with the Red Roof Inn Defendants' requirements;

    d. Earning revenue from the operation of Las Vegas Red Roof Inn;

    e. Assisting in the establishment of Las Vegas Red Roof as a business venture;

    f. Communicating, working with, and complying with the Red Roof Inn Defendants regarding the operation of the Las Vegas Red Roof Inn;

5

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

g. Managing the Red Roof Inn Defendants' who monitor the internet and social media presence, including reputation management, and the collection of customer data

20. Upon information and belief, the Red Roof Inn Defendants exercised significant control over the Las Vegas Red Roof Inn's operations, policies, procedures, and business practices, such as:

a. Providing specifications for the Las Vegas Red Roof Inn's physical structure;

b. Assisted with the grand opening of the Las Vegas Red Roof Inn in compliance with the Red Roof Inn Defendants' contracts, policies and standards;

c. Communicating, monitoring, reviewing, and grading compliance with Defendant Paradise about the operations of the Las Vegas Red Roof Inn;

d. Requiring Defendant Paradise to participate in training sessions and meetings with the Red Roof Inn Defendants;

e. Established and dictated policies, procedures, and training related to safety, security, and response protocols at the Las Vegas Red Roof Inn;

f. Required the use of the Red Roof Inn Defendants' reservations system at the Las Vegas Red Roof Inn, which the Red Roof Inn Defendants oversaw and controlled;

g. Managed, Operated, Monitored and Processed payment information for guests at the Las Vegas Red Roof Inn through the Red Roof Inn Defendants' corporate systems;

h. Received benefits from room rentals at the Las Vegas Red Roof Inn, governed by the franchising agreement between Defendant Paradise and the Red Roof Inn Defendants.

i. Exercised joint control over the Las Vegas Red Roof Inn;

j. Provided and required the use of branded clothes and other service goods to Defendant Paradise, for the operation of the Las Vegas Red Roof Inn;

k. Managed, monitored, operated, the social media and online presence of the Las Vegas Red Roof Inn;

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

l.  Provided and required the use of the software, hardware, and platforms for data sharing with the Red Roof Inn Defendants;

m.  Provided and required the use of reservation platforms where payment methods and suspicious reservations could indicate trafficking at the Las Vegas Red Roof Inn;

n.  Provided franchise and brand support to Defendant Paradise through back-end management;[6]

o.  Provided training and education to Defendant Paradise's Las Vegas Red Roof Inn employees, agents, and/or staff through webinars, seminars, conferences, and online portals;

p.  Provided, controlled, and maintained customer review and response platforms and third party vendor platforms of same;

q.  Required the use of online bookings on Red Roof's domain;

r.  Required Defendant Paradise's Las Vegas Red Roof Inn to use Red Roof's customer rewards program, property management software, and approved vendors for internet services, Wi-Fi access, and filtering;

s.  Provided IT support to Defendant Paradise for all property management systems, owned, operated, and required by the Red Roof Inn Defendants;

t.  Set employee wages of Defendant Paradise's Las Vegas Red Roof Inn employees, agents, and/or staff;

u.  Created standardized employee training methods and mandating strict operating rules for Defendant Paradise's Las Vegas Red Roof Inn employees, agents, and/or staff;

v.  Conducted regular inspections of the Las Vegas Red Roof Inn's facilities and

---

[6] *See e.g.*, *Brand Support*, RED ROOF, (last visited April 15, 2025), https://www.redrooffranchising.com/brand-support, ("We support our franchisees with extensive on-site training. On everything from helping with pricing strategy and operational expense management, to assistance with marketing and operation programs…Our cost-effective sourcing solutions, efficient technology support, and incredible property management system add even more value to your Red Roof franchise.")

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

operations;

    w. Fixed profit margins; and

    x. Shared profits.

21. Upon information and belief, Plaintiffs' claims against the Red Roof Inn Defendants arise out of their actual and apparent agency relationship with their branded hotels, including Defendant Paradise's Las Vegas Red Roof Inn, where Plaintiffs were trafficked. The Red Roof Inn Defendants are liable directly, vicariously, and indirectly through an agency relationship for the acts and/or omissions of the employees at their branded hotels, including the Las Vegas Red Roof Inn.

22. Furthermore, the Red Roof Inn Defendants benefited from operations at Las Vegas Red Roof Inn beyond royalty payments and licensing fees. Defendants gathered and utilized data from guests, traffickers, and "Purchasers" or "Johns" who accessed internet/Wi-Fi services, further enhancing Defendants' financial and marketing advantages.

23. Upon information and belief, the Red Roof Inn Defendants are vicariously liable for the acts and omissions of its agents, branded properties, Defendant Paradise, and any sub-agents or employees operating at its branded properties, including Las Vegas Red Roof. Due to the Red Roof Inn Defendants' extensive control over the operations, staffing, and management of its branded hotels, including the oversight of security, reporting mechanisms, and operational standards, the Red Roof Inn Defendants are responsible for the actions taken at the Las Vegas Red Roof Inn.

24. Plaintiff is informed, believes and thereon alleges that all of the acts, omissions and conduct described below of each, and every Defendant was duly authorized, ordered, and directed by the respective and collective Defendant corporate employers, officers, and management-level employees of said corporate employers. In addition thereto, said corporate employers participated in the aforementioned acts and conduct of their said employees, agents and representatives and each of them; and upon completion of the aforesaid acts and conduct of said corporate employees, agents and representatives, the Defendant corporations, respectively and collectively, ratified, accepted the benefits of, condoned, lauded, acquiesced, approved, and

8

consented to each and every of the said acts and conduct of the aforesaid corporate employees, agents and representatives.

25. The true names and capacities, whether individual, corporate, associate, governmental or otherwise, of defendants designated herein as DOES 1 through 10; ROE CORPORATIONS 11 through 20, and ABC LIMITED LIABILITY COMPANIES 21 through 30, ("DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants"), inclusive, are unknown to Plaintiffs at this time, who therefore sue said Defendants by such fictitious names. When the true names and capacities of said Defendants have been ascertained, Plaintiffs will amend this Complaint accordingly, and reserve the right to do so at the appropriate time.

26. Plaintiffs are informed, believe, and thereon allege that DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants are responsible, negligently or in some other actionable manner, for the events and happenings hereinafter referred to, and caused injuries and damages proximately thereby to Plaintiffs as hereinafter alleged.

27. Plaintiffs are informed, believe and thereon allege that DOES/ROE CORPORATIONS/ABC LIMITED LIABILITY COMPANIES Defendants were involved in the initiation, approval, support or execution of the wrongful acts upon which this litigation is premised, or of similar actions against Plaintiffs of which Plaintiffs are presently unaware or without adequate knowledge.

28. Plaintiffs are informed, believe, and thereon allege that DOES/ROE/ABC Defendants are predecessors-in-interest, successors-in-interest, and/or agencies otherwise in a joint venture with, and/or serving as an alter ego of, any and/or all defendants named herein; and/or are entities employed by and/or otherwise directing the individual Defendants in the scope and course of their responsibilities at the time of the events and circumstances alleged herein; and/or are entities otherwise contributing in any way to the acts complained of and the damages alleged to have been suffered by Plaintiffs herein. Upon information and belief, each of the defendants designated as DOES/ROE/ABC is in some manner vicariously and/or statutorily responsible for the events alleged by this Complaint and actually, proximately, and/or legally

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

9

caused damages to Plaintiffs.

29. Defendants, and each of them, were the apparent and ostensible principals, apparent and ostensible agents, agents, apparent and ostensible servants, servants, apparent and ostensible employees, employees, apparent and ostensible assistants, assistants, apparent and ostensible consultants, and consultants of their Co-Defendants, and were acting as such within the course, scope, and authority of said agency and employment, and that each of the defendants, as aforesaid, when acting as a principal, was in some manner responsible for the events alleged herein as an agent, servant, employee, assistant, and consultant.

30. Every act or omission of the Defendants and their apparent and ostensible principals, principals, apparent and ostensible agents, agents, apparent and ostensible servants, servants, apparent and ostensible employees, apparent and ostensible assistants, assistants, apparent and ostensible consultants, and consultants of their Co-Defendants, whether or not within the scope of their agency, was ratified by the other remaining Defendants.

## JURISDICTION AND VENUE

31. Plaintiffs repeat and reallege each and every allegation contained above as though fully set forth herein.

32. This Federal District Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 because Plaintiffs' claims arise under federal law, specifically the Trafficking Victims Protection Reauthorization Act (TVPRA), 18 U.S.C. § 1595.

33. This Federal District Court has personal jurisdiction over Defendants RRI, RRF, and Paradise, pursuant to Fed. R. Civ. P. 4(k)(1)(A) and Nevada's long-arm statute, NRS 14.065, because Defendants Red Roof Inns, Inc., and Red Roof Franchising, LLC have purposefully availed themselves of the privilege of conducting business activities within Nevada. Further, Red Roof Inn Defendants have established minimum contacts with Nevada through their ownership, operation, and/or control of the hotel property where Plaintiffs were trafficked, as well as their continuous and systematic business activities in Nevada as outlined above.

34. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this District.

10

Specifically, Plaintiffs were trafficked at the Las Vegas Red Roof Inn, located within this District.

35. Venue is also proper in this District pursuant to 28 U.S.C. § 1391(b)(3), as this Federal District Court has personal jurisdiction over Defendants RRI and RRF.

### SEX TRAFFICKING UNDER FEDERAL LAW

36. Plaintiffs repeat and reallege each and every allegation contained above as though fully set forth herein.

37. The requirement for liability under the Trafficking Victims Protection Reauthorization Act ("TVPRA") § 1595, based on a beneficiary theory, can be stated as follows: (1) the person or entity "knowingly benefits, financially or by receiving anything of value"; (2) "from participating in a venture"; which (3) the "person knew or should have known has engaged in an act in violation of this chapter." 18 U.S.C. § 1595(a).

38. Sex trafficking' is defined by the TVPRA under 22 U.S.C. § 7102(12) as "the recruitment, harboring, transportation, provision, obtaining, patronizing, or soliciting of a person for the purpose of a commercial sex act."

39. "Commercial Sex Act" is defined as any sex act for which anything of value is given to or received by a person. 22 U.S.C. § 7102(4).

40. "Severe Forms of Trafficking in Persons" is defined as any instance of sex trafficking where: (a) a commercial sex act is induced by force, fraud, or coercion; or (b) the person induced to perform such an act is under eighteen (18) years of age. 22 U.S.C. § 7102(11).

41. Pursuant to 18 U.S.C. § 1591(a), all who knowingly provide or obtain commercial sex that was provided or obtained through force, fraud, and coercion, or "cause a person to engage in a commercial sex act" are guilty of sex trafficking. This includes, at a minimum, both the 'traffickers' who recruit, harbor, transport, and provide individuals for forced commercial sex work and the 'Johns' or 'buyers' who obtain, solicit, or patronize forced commercial sex work.

42. 18 U.S.C. § 1595 provides for a beneficiary liability claim against "whoever knowingly benefits, or attempts or conspires to benefit, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation" of the TVPRA. *See* 18 U.S.C. § 1595(a).

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

11

**GENERAL ALLEGATIONS**

43.     Plaintiffs repeat and reallege each and every allegation contained above as though fully set forth herein.

44.     The Sex Trafficking industry generates approximately $236 Billion annually[7], making it the second-largest criminal trade after the sale of illegal drugs.[8]

45.     Traffickers use hotel and motel rooms as hubs for their operations,[9] where victims are harbored, raped, assaulted, and forced to service buyers. The hospitality industry has made millions by participating in ventures that it knew or should have known engaged in violations of the TVPRA, under 18 U.S.C. §1591(a).

46.     Due to the prevalent connection between hotels and sex trafficking, government agencies and nonprofits including the United States Department of Homeland Security, the National Center for Missing and Exploited Children, the Polaris Project, the United States Department of Transportation, various attorney generals, and the End Child Prostitution and Trafficking (hereinafter "ECPAT"), among others, have extensively educated the hotel industry, including Red Roof, on identifying and responding to sex trafficking incidents and have established recommended policies and procedures for recognizing signs of sex trafficking.[10] [11]

---

[7] Rosalyn Roden, *Traffickers taking $236 billion in illegal profits at victims' expense*, Hope for Justice (citing International Labor Organization's 2024 report), (last visited April 15, 2025), https://hopeforjustice.org/news/traffickers-taking-236-billion-in-illegal-profits-at-victims-expense/

[8] *Transnational organized crime: the globalized illegal economy*, United Nations Office on Drugs, (last visited April 15, 2025), https://www.unodc.org/toc/en/crimes/organized-crime.html

[9] Bradley Myles, *Combating Human Trafficking in the Hotel Industry*, HUFFINGTON POST (last visited April 15, 2025), https://www.huffpost.com/entry/combating-human-trafficking-in-the-hotel-industry_b_7840754

[10] Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025) https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing & Exploited Children, *Child Sex Trafficking Overview*, (last visited April 15, 2025), https://www.missingkids.org/content/dam/missingkids/pdfs/CST%20Identification%20Resource.pdf; Love 146, *Red Flags for Hotel and Motel Employees*, (last visited April 15, 2025), https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, *Human Trafficking Red Flags*, (last visited April 15, 2025) https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf .

[11] United States Department of Homeland Security Blue Campaign – *One Voice. One Mission. End Human Trafficking*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf; National Center for Missing and Exploited Children, *Trafficking Risk*

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

47.     Indicators of sex trafficking in a hotel environment follow a well-known pattern and are easily detectable by appropriately trained staff. Various organizations have developed human trafficking "tool kits," which help hotel staff in every position identify and respond to signs of sex trafficking.[12] From check-in to check-out, there are indicators that traffickers and their victims exhibit during their stay at the hotel.

48.     Despite this knowledge, the hotel industry continues to prioritize profits over victims' safety. While hospitality corporations swiftly adapted their business practices to respond to the COVID-19 pandemic, they have remained inactive in the face of the human trafficking crisis. This failure to take meaningful action has led to the repeated sexual abuse and rape of victims on their properties.

49.     Defendants, and each of them, systematically failed to create, adopt, implement, and enforce anti-trafficking policies. This failure persists despite the availability of resources and training programs specifically designed for the hospitality industry to combat human trafficking.

50.     Defendants, and each of them, neglected to provide staff with necessary training to identify and respond to trafficking, and failed to mandate brand-wide training, allowing trafficking to persist unchecked.

51.     Defendants, and each of them, have actively profited from renting rooms where victims are forced into commercial sex against their will.

52.     Plaintiffs in this case are survivors of sex trafficking, seeking justice through the judicial system, which Congress has empowered to provide remedies under the TVPRA. Under 18 U.S.C. § 1595 Defendants, and each of them, knowingly benefited from participation in a

*Factors*, https://www.missingkids.org/theissues/trafficking#riskfactors (last visited April 15, 2025); Love 146, *Red Flags for Hotel & Motel Employees*, (last visited April 15, 2025), https://love146.org/wp-content/uploads/2017/04/Hospitality-Red-Flag-and-Reporting-Love146.pdf; Texas Attorney General, Human *Trafficking Red Flags*, (last visited April 15, 2025) https://www2.texasattorneygeneral.gov/files/human_trafficking/human_trafficking_red_flags_handout.pdf (last visited April 15, 2025); U.S. Department of Transportation*, Indicators of Human Trafficking,* (last visited April 15, 2025), https://www.transportation.gov/stop-human-trafficking/indicators; Ohio Attorney *General, Human Trafficking Initiative*, (last visited April 15, 2025), https://www.ohioattorneygeneral.gov/Individuals-and-Families/Victims/Human-Trafficking.
[12] E.g., Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

13

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

venture that it knew or should have known to be in engaging in violations of 18 U.S.C. § 1591(a).

53.     Plaintiffs have suffered severe injuries as a result of their prolonged exploitation, including ongoing mental, emotional, and psychological trauma. Because these injuries cannot be separated or assigned to a single Defendant, federal common law provides for joint and several liability, making all violators of Section 1595 of the TVPRA liable for a victim's damages. Plaintiffs are entitled to all compensatory and non-compensatory damages incurred during their trafficking period.

54.     The hospitality industry cannot continue to feign ignorance while profiting from the exploitation of trafficking victims. Defendants, and each of them, must be held accountable for their knowing participation in ventures that violate the TVPRA, prioritizing financial gain over the safety and dignity of the individuals who have suffered under their watch.

## DEFENDANTS' ACTUAL AND CONSTRUCTIVE KNOWLEDGE OF SEX TRAFFICKING AT THE LAS VEGAS RED ROOF INN

55.     Plaintiffs repeat and reallege each and every allegation contained above as though fully set forth herein.

56.     Defendants are aware that the hospitality industry serves as a primary facilitator of human trafficking, both domestically and internationally.[13] The United Nations,[14] international non-profit organizations,[15] and the U.S. Department of Homeland Security,[16] have documented this well-known epidemic of human trafficking for years and brought particular attention to the

---

[13] Giovanna L. C. Cavagnaro, *Sex Trafficking: The Hospitality Industry's Role and Responsibility*, CORNELL UNIVERSITY SCHOOL OF HOTEL ADMINISTRATION, (last visited April 15, 2025) https://ecommons.cornell.edu/items/62deb32c-ce31-4780-bb95-7827509a8890.

[14] UNITED NATIONS OFFICE ON DRUGS AND CRIME, *Global Report on Trafficking in Persons*, (last visited April 15, 2025), https://www.unodc.org/documents/data-and-analysis/tip/2021/GLOTiP_2020_15jan_web.pdf; *See also,* UNITED NATIONS OFFICE ON DRUGS AND CRIME, *We must act together to fight exploitation and human trafficking in tourism, say United Nations and international partners*, (last visited April 15, 2025), https://www.unodc.org/unodc/en/press/releases/2012/April/we-must-act-together-to-fight-exploitation-and-human-trafficking-in-tourism-say-united-nations-and-international-partners.html

[15] The Polaris Project and ECPAT-International have published extensive reports and professional toolkits on human trafficking in the hospitality industry for years.

[16] U.S. Department of Homeland Security, *Human Trafficking and the Hospitality Industry*, (last visited April 15, 2025), https://www.dhs.gov/archive/blue-campaign/human-trafficking-and-hospitality-industry; U.S. Department of Homeland Security, *Blue Campaign Toolkit*, (last visited April 15, 2025), https://www.dhs.gov/sites/default/files/publications/blue-campaign/toolkits/hospitality-toolkit-eng.pdf

14

indispensable role of hotels.

57. Since 2004, initiatives like ECPAT-USA launched the Tourism Child-Protection Code of Conduct (hereinafter the "Code") in the United States outlining specific hotel practices to prevent sex trafficking, such as: (1) prohibiting hourly room rates; (2) disallowing cash payments for accommodations; (3) monitoring online platforms for sex advertisements mentioning the hotel's name or featuring images of its rooms; (4) implementing regular changes to internet and Wi-Fi passwords in guest rooms and public areas; (5) tracking patterns of frequent visitors to specific rooms; (6) maintaining vigilance for rooms with excessive quantities of prophylactics, lubricants, and towels; and (7) mandating the registration of all visitors, including detailed information such as guest name, visitor name, arrival and departure times, and room number.

58. The Red Roof Defendants are signatories of The Code an anti-trafficking initiative developed by ECPAT, committing to policies aimed at combating human trafficking. Despite this commitment, Red Roof failed to implement anti-trafficking measures at its branded properties, continuing to profit from trafficking and exploitation occurring at its locations.

59. As a signatory to ECPAT, the Red Roof Defendants publicly committed to follow the organization's anti-trafficking guidance and participate in programs to prevent sex trafficking at its hotels. Consequently, Red Roof was obligated to establish and enforce effective standards, mandates, and operational measures to combat trafficking within its properties.

60. In 2022, the Red Roof Defendants deepened its partnership with ECPAT-USA by launching an industry-wide fundraising campaign at the Asian American Hotel Owners Association Conference (AAHOACON). Red Roof began the campaign with a $10,000 donation, seeking to rally the hospitality industry to combat human trafficking.[17] Despite publicly promoting this effort and claiming to prioritize anti-trafficking measures, Red Roof failed to enforce the policies necessary to prevent trafficking and exploitation at its properties, including

---

[17] PR Newswire, *Red Roof and ECPAT-USA Launch Fundraising Campaign at the Hotel Industry's AAHOACON 2922 Conference,* (last visited April 15, 2025), https://www.prnewswire.com/news-releases/red-roof-and-ecpat-usa-launch-fundraising-campaign-at-the-hotel-industrys-aahoacon-2022-conference-301523022.html

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

15

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

at the Las Vegas location where Plaintiffs were trafficked.

61.     Nationwide initiatives, such as the United Nations' Blue Heart Campaign (1997)[18] and the Department of Homeland Security's Blue Campaign (2010)[19], have acknowledged the prevalence of human trafficking within the hotel industry and the absence of adequate internal policies to address the issue. In response, these campaigns have aimed to educate both the public and private sectors—including hotel businesses—by providing free resources to help the hospitality industry combat human trafficking.

62.     Widely recognized indicators of sex trafficking, which Defendants, and each of them, were made of aware of, knew, or should have known, include but are not limited to:

a.  Individuals show signs of fear, anxiety, tension, submission, and/or nervousness;

b.  Individuals show signs of physical abuse, restraint, and/or confinement;

c.  Individuals exhibit evidence of verbal threats, emotional abuse, and/or being treated in a demeaning way;

d.  Individuals show signs of malnourishment, poor hygiene, fatigue, sleep deprivation, untreated illness, injuries, and/or unusual behavior;

e.  Individuals lack freedom of movement or are constantly monitored;

f.  Individuals avoid eye contact and interaction with others;

g.  Individuals have no control or possession of money or ID;

h.  Individuals dress inappropriately for their age, for the weather, or have lower quality clothing compared to others in their party;

i.  Individuals have few or no personal items – such as no luggage or other bags;

j.  Individuals appear to be with significantly older "boyfriend" or in the company of older males;

k.  A group of girls appear to be traveling with an older female or male;

---

[18] United Nations, *The Blue Heart Campaign,* (last visited April 15, 2025), https://www.unodc.org/blueheart/#:~:text=The%20Blue%20Heart%20Campaign,help%20prevent%20this%20heinous%20crime

[19] Department of Homeland Security, *DHS Blue Campaign Five Year Milestone*, (last visited April 15, 2025), *https://www.dhs.gov/archive/news/2015/07/22/dhs-blue-campaign-five-year-milestone*

l. A group of males or females with identical tattoos in similar locations. This may indicate "branding" by a trafficker;

m. Drug abuse or frequent use of "party drugs" including (but not limited to) GHB, Rohypnol, Ketamine, MDMA (Ecstasy), Methamphetamines, Crack Cocaine, Cocaine, and Marijuana;

n. Possession of bulk sexual paraphernalia such as attire, condoms, birth control, or lubricant;

o. Possession or use of multiple cell phones; and

p. Possession or usage of large amounts of cash or pre-paid cards.

63. Upon information and belief, Defendants, and each of them, have access to individual hotel location do-not-rent (hereinafter "DNR") lists that often list reasons for the refusal to rent, including suspicion of human trafficking. Defendants, and each of them, failed to share this information across their branded properties or take proactive steps to prevent trafficking.

64. Guest reviews on sites like TripAdvisor, Yelp, Google, and Expedia frequently cite issues such as prostitution, physical violence, and criminal activity at the Las Vegas Red Roof Inn.

65. Defendants, and each of them, monitored online reviews of the Las Vegas Red Roof Inn, which, upon information and belief, provide substantial evidence of human trafficking, violence, and other illicit activities occurring on the premises, such as:

a. A review from 2018 describes a pimp yelling and swearing at a prostitute about which room to use while holding seven room keys, indicating multiple rooms were being used for prostitution.

b. A review from 2017 calls the hotel a "hooker's paradise," describing prostitutes yelling in hallways, men shouting, and a total absence of security. The guest, unable to sleep, reported the disturbances to the front desk, only to be met with a condescending smirk from the employee, who dismissively responded, "It's Vegas."

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

17

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

c.  A review from 2021 states that upon arriving at the hotel, the guest encountered a person passed out on the sidewalk, witnessed a drug deal, and saw people hanging over the balcony yelling, while others were sitting in cars smoking marijuana.

d.  A review from 2021 details bloodstains left in a room.

e.  A review from 2021 describes a dirty room with a comforter covered in burn marks, while police actively arrested people at the hotel.

f.  A 2016 review reports that a guest's belongings were stolen after their door was kicked in. The hotel stated they have no video surveillance. The guest noted, this hotel does not value their customers safety and security.

g.  Several reviews from 2018-2024 report fraudulent credit card charges, room break-ins, and stolen property.

h.  Several reviews spanning 2016-2024 report filthy conditions, including stained or used towels, unclean rooms, unclean floors, and bug infestations.

i.  Reviews from 2015-2024 complain of excessive noise, constant disturbances, and heavy traffic due to the hotel's proximity to an airport and a strip club.

66.  Upon information and belief, these reviews, spanning nearly a decade, provide clear evidence of human trafficking at the Las Vegas Red Roof Inn; this evidence was required to be reported to the Red Roof Inn Defendants and, upon information and belief it was reported and Defendants failed to address these issues and failed to intervene highlighting a disregard for guest safety and a tolerance of sex trafficking. These examples demonstrate that the Defendants, and each of them, knew or should have known of the problem and failed to take proactive measures to not profit from it.

67.  Evidence from other locations shows that Red Roof has consistently received reports of widespread human trafficking at their branded properties, knew that the prevalence of sex trafficking was an issue across its branded properties and failed to do anything to prevent continuing to profit from it

68.  The Red Roof Inn located at 1221 E. Dublin Granville Rd, Columbus, Ohio 43229 was officially declared a public nuisance and shut down for one year due to ongoing illegal

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

prostitution and rampant drug activity.[20]

69.     Upon information and belief, The Woburn, Massachusetts Daily Times reported as early as February 2000 that its Red Roof Inn was facing closure by the city licensing commission as a result of pervasive criminal activity, prostitution and sex trafficking. Such criminal activity persisted unchecked until at least 2012, when Joseph Maddux, Vice President of Operations for Red Roof Inn, was compelled to appear before the Licensing Commission in response to disturbing reports of dangerous men exploiting prostitutes as young as fourteen (14) at the Woburn Red Roof Inn, along with 118 police reports from 2011 alone. In his testimony, Maddux assured the Commission that Red Roof Inn's President and legal team had been informed of the situation and outlined potential measures to address the ongoing criminal activity including prostitution at its branded properties:[21]

a.  Installation and prominent display of new security systems providing 24-hour monitoring;

b.  Institution of nation-wide changes to its registration policies and the information obtained at check-in;

c.  Increased physical security of the Red Roof Inn location;

d.  Elimination of smoking floor(s); and

e.  Hotel upgrades and price increases to price rooms beyond the criminal clientele.

70.     However, there is no evidence that these measures were ever implemented either at the Woburn location or nationwide. In July 2020, the Woburn License Commission once again took action against the Red Roof Inn after over 150 police incident reports, including incidents of human trafficking, prostitution, and drug activity.[22]

---

[20] Justin Eddy, Esq, Partner at Tucker Ellis LLP, "*Hotel Known for Drug Deals and Prostitution a Nuisance, Closed for One Year*", (last visited April 15, 2025), https://www.linkedin.com/pulse/hotel-known-drug-deals-prostitution-nuisance-closed-one-justin-eddy; *see also,*  State ex rel. Columbus City Attorney Richard C. Pfeiffer, Jr., v. Red Carpet Inn, et. al., No. 14AP-506,(M.C. No. 2014 EVH 60019), (last visited April 15, 2025), https://www.supremecourt.ohio.gov/rod/docs/pdf/10/2015/2015-Ohio-4035.pdf

[21] James Haggerty, *Red Roof Inn Officials Vow to Cooperate*, Daily Times Chronicle, (last visited April 15, 2025), http://homenewshere.com/daily_times_chronicle/news/woburn/article_99cddca6-5983-11e1-8393-0019bb2963f4.html

[22] Woburn License Commission Regular Meeting City Council Chamber, (last visited April 15, 2025), *https://woburnma.gov/wp-content/uploads/2020/08/7-23-20-License-Commission-minutes.pdf*

19

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

71.     Publicly available information, including news reports, reveals the long-standing and consistent role of Red Roof in providing a venue for sex trafficking over the years. Among the notable press coverage detailing the frequent use of Red Roof properties for illegal activities, the following incidents were highlighted:

a.  In 2010, a man and woman appeared in court on charges of trafficking a 14-year-old Milwaukee girl at a Red Roof Inn in Oak Creek, Wisconsin. At the Red Roof Inn, the traffickers gave the girl marijuana to smoke and then took pictures of her naked, which were put on a local website.[23]

b.  In 2010, two individuals were charged with transporting a minor for prostitution after a 17-year-old runaway from California was trafficked at Red Roof Inn locations in New York and Maryland.[24]

c.  In 2012, a Pennsylvania man was indicted by a federal grand jury on sex trafficking charges involving a 16-year-old girl trafficked at a New Jersey Red Roof Inn in May of that year. He was sentenced to 10 years in federal prison in 2014.[25]

d.  In 2012, a Minneapolis police officer investigating juvenile sex trafficking discovered an ad on Backpage.com that featured a young woman offering "unrushed service, full of pleasure." When the officer contacted the number on the ad, they learned the woman was at the Red Roof Inn in Woodbury, Minnesota.[26]

---

[23] John Diedrich, *2 face federal sex-trafficking charges*, Milwaukee Journal Sentinel, (last visited April 15, 2025), https://archive.jsonline.com/news/crime/96508359.html/

[24] Freeman Klopott, *Teen Prostituted, Held Against Her Will in MD. and VA. Hotels, Feds Say*, The Washington Examiner, (last visited April 15, 2025), https://www.washingtonexaminer.com/teen-prostituted-held-against-her-will-in-md-and-va-hotels-feds-say

[25] Michaelangelo Conte, *Man Charged With Sex Trafficking a Teen He Met in Secaucus Takes Plea*, NJ.com, (last visited April 15, 2025), https://www.nj.com/hudson/2014/03/man_originally_charged_with_sex_trafficking_a_16-year-old_he_met_in_secaucus_takes_a_plea.html

[26] Mike Longaecker, *Police: Sex Trafficking Victim Turns Up at Woodbury Hotel*, Republican Eagle, (last visited April 15, 2025), https://www.republicaneagle.com/news/public_safety/police-sex-trafficking-victim-turns-up-at-woodbury- hotel/article_88eac778-73b4-50cb-ac65-182279d50948.html/

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

e. In 2012, a Rochester, New York man and woman were charged in a sex trafficking case involving a minor. Investigators found that two customers paid to have sex with the victim, and the woman was arrested at the Red Roof Inn.[27]

f. In 2012 two teenage girls were trafficked at Red Roof Inn in Charlotte, North Carolina. Investigations revealed that pimps would pay Red Roof Inn mangers and maids to not report the illegal activities taking place. This situation led to Red Roof Inn eventually pulling its brand from the hotel.[28]

g. In 2013, a 50-year-old man was charged with prostitution and human trafficking, for forcing a woman to perform sex acts against her will at the Red Roof Inn on Eisenhower Boulevard in Pennsylvania.[29]

h. In 2013, a Lubbock, Texas grand jury indicted four suspects arrested during a prostitution sting at a Red Roof Inn.[30]

i. In 2013, the Knox County Sheriff's Office arrested a Knoxville, Tennessee man for human trafficking at a Red Roof Inn.[31]

j. In 2014, a Cincinnati, Ohio man pled guilty in U.S. District Court to locking women in his Avondale home and then driving them to a Red Roof Inn in Louisville, Kentucky, where he forced them into prostitution.[32]

---

[27] Department of Justice, *ROCHESTER MAN AND WOMAN CHARGED IN SEX TRAFFICKING CASE*, (last visited April 15, 2025), https://www.justice.gov/archive/usao/nyw/2012/TwoCharged.pdf
[28] *FBI investigating teen human trafficking at Charlotte hotel,* WBTV3, (last visited April 15, 2025), https://www.wbtv.com/story/30058536/fbi-investigating-teen-human-trafficking-at-charlotte-hotel
[29] Brittany Miller, *Man charged in prostitution ring headed to Dauphin County court*, Penn Live Patriot News (last visited April 15, 2025), https://www.pennlive.com/midstate/2013/10/post_625.html
[30] *4 Indicted on Prostitution Charges after Red Roof Inn sting*, KCBD News 11, (last visited April 15, 2025), https://www.kcbd.com/story/23272377/4-charged-with-prostitution-offenses-after-red-roof-inn-sting/
[31] *Knoxville Man Faces Human Trafficking Charges*, End Slavery Tennesse, (last visited April 15, 2025), https://www.endslaverytn.org/news/knoxville-man-faces-human-trafficking-charges-newsarticle
[32] Nathan Vicar, *Avondale Man Pleads Guilty to Sex Trafficking in Louisville*, Fox 19 Now, (last visited April 15, 2025), https://www.fox19.com/story/27390036/avondale-man-pleads-guilty-to-sex-trafficking-in-louisville/

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

k.  In 2014, a Rhode Island man pled guilty to attempted sex trafficking after being accused of attempting to procure customers for sex with a 23-year-old woman at a Red Roof Inn on Wolf Road in Albany, New York, on August 22, 2012.[33]

l.  In 2014, a man was arrested by the FBI in Orlando, Florida for holding a 15-year-old girl at a Phoenix, Arizona Red Roof Inn and selling her for sex. He was later sentenced to eight years in prison.[34]

m.  In 2014, a Mississippi man was arrested on human trafficking charges for trafficking a 16-year-old girl from a Red Roof Inn in Madison County. He pled guilty to the charges and was sentenced to 25 years in prison.[35]

n.  In 2015, authorities arrested 15 men in a sex-with-minors sting at a Red Roof Inn in Woodbury, Wisconsin. The investigation began in 2014 after a man was apprehended at the hotel for responding to a Craigslist ad offering sex with a 32-year-old woman, along with the and fondling of her deaf daughter.[36]

o.  In 2016, two individuals were charged with human trafficking involving a minor after their arrest at a Red Roof Inn in Louisville, Kentucky.[37]

p.  In 2016, two individuals were charged in a human trafficking scheme after their arrest at a Red Roof Inn in Jessup, Maryland.[38]

---

[33] Dennis Yusko, *Sex Traffic Case Ends in Plea*, Times Union, (last visited April 15, 2025), https://www.timesunion.com/local/article/Sex-traffic-case-ends-in-plea-5440052.php
[34] Jamee Lind, *Phoenix Man Gets 8 Years for Selling Teen For Sex*, The Republic, (last visited April 15, 2025), https://www.azcentral.com/story/news/local/phoenix/2015/03/30/phoenix-man-sex-trafficking-sentence-abrk/70691190/
[35] Mary Grace Eppes*, Man sentenced for human trafficking in Madison Co.*, WLBT3, (last visited April 15, 2025), https://www.wlbt.com/story/27862158/man-sentenced-for-human-trafficking-in-madison-co/
[36] Mathias Baden*, UPDATE: Police Arrest 15 Men in Sex-With-Minors Sting at Red Roof Inn*, Republican Eagle, (last visited April 15, 2025), https://www.republicaneagle.com/news/public_safety/update-police-arrest-15-men-in-sex-with-minors- sting-at-red-roof-inn/article_e48299f7-e13d-5c86-8e9f-f7faf22a8998.html
[37] Charles Gazaway, *2 Charged with Human Trafficking Involving Juvenile*, Wave 3, (last visited April 15, 2025), https://www.wave3.com/story/31910401/2-charged-with-human-trafficking-involving-juvenile
[38] Saliqa Khan, *2 Men Charged in Howard County Human Trafficking Scheme*, WBAL-TV 11, (last visited April 15, 2025), https://www.wbaltv.com/article/2-men-charged-in-howard-county-human-trafficking-scheme/7148473#

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

q. In 2016, two individuals were arrested in Lawrence, New Jersey, and accused of running an interstate human trafficking ring out of a Red Roof Inn.[39]

r. In 2016, a man was sentenced to ten years in prison for trafficking a 15-year-old girl at two motels, including a Red Roof Inn in Enfield, Connecticut.[40]

s. In 2016, two individuals were arrested on human trafficking charges for forcing a woman into prostitution at a Red Roof Inn in Lafayette, Indiana.[41]

t. In 2016, a man was sentenced for human trafficking charges after forcing a woman into prostitution at various hotels, including a Red Roof Inn in Newbury Port, Massachusetts.[42]

u. In 2016, arrests were made following the investigation of a human trafficking operation that was conducted out of several hotels, including a Red Roof Inn in Joliet, Illinois.[43]

v. In 2017, a man was charged with sex trafficking at a Red Roof Inn in St. Louis, Missouri.[44]

w. In 2017, six individuals were arrested following a prostitution bust at a Red Roof Inn in Springfield Township, Ohio.[45]

---

[39] Isaac Avilucea, *New York Man Accused in Lawrence Sex Rings Boasts About $600K Manhattan Home*, The Trentonian, (last visited April 15, 2025), https://www.trentonian.com/2016/09/01/new-york-man-accused-in-lawrence-sex-rings-boasts-about-600k-manhattan-home/

[40] David Owens, *Hartford Man Sentenced to Prison for Sex Trafficking of 15-Year-Old Girl*, Hartford Courant, (last visited April 15, 2025), https://www.courant.com/2016/11/14/hartford-man-sentenced-to-prison-for-sex-trafficking-of-15-year-old-girl/

[41] Joseph Paul, *Suspected Pimps Charged With Human Trafficking*, Lafayette Journal & Courier, (last visited April 15, 2025), https://www.jconline.com/story/news/crime/2016/12/29/court-docs-alleged-pimps-paid-victim-heroin/95952012/

[42] Julie Manganis, *Man Gets 5 to 8 Years in Prison for Human Trafficking*, Newbury Port News, (last visited April 15, 2025), https://www.newburyportnews.com/news/man-gets-5-to-8-years-in-prison-for-human-trafficking/article_79f32b03-3e96-5360-af02-76c53e249dec.html

[43] Felix Sarver, *Joliet Hotel Among Meeting Places in Rappers' Sex Trafficking Ring*, Shaw Local News Network, (last visited April 15, 2025), https://www.shawlocal.com/2016/01/18/joliet-hotel-among-meeting-places-in-rappers-sex-trafficking- ring/alh59bo/

[44] Joel Currier, *Man Charged With Sex Trafficking at Red Roof Inn in St. Loui*s, STL Today, (last visited April 15, 2025), https://www.stltoday.com/news/local/crime-and-courts/man-charged-with-sex-trafficking-at-red-roof-inn-in-st- louis/article_4c70ac45-ac34-5d28-bd3c-92efde095381.html

[45] Tara Molina, *FBI Arrest Six at Springfield Township Red Roof Inn*, News 5 Cleveland, (last visited April 15, 2025), https://www.news5cleveland.com/news/local-news/oh-summit/prostitution-bust-summit-co-investigators-fbi-arrest-six-at-springfield-township-red-roof-inn

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

x. In 2017, a human trafficking investigation led to the arrest of 23 individuals for trafficking eight girls, ranging in age from 14 to 17, at multiple hotels in Stockton, California, including the Red Roof Inn.[46]

y. In 2017, two church pastors were arrested for sex trafficking underage children, including at a Red Roof Inn in Toledo, Ohio.[47]

z. In 2018, two men from Delaware were indicted on child sex trafficking charges after a 15-year-old girl was found at a Red Roof Inn in Newark, Delaware.[48]

aa. In 2018, two individuals were charged for operating a sex trafficking ring out of a Red Roof Inn in Urbana, Illinois.[49]

bb. In 2018, a local news station investigated a Florida Red Roof Inn because of the high volume of search warrants that continued to pop up for the hotel, including multiple warrants that reported a high volume of prostitution activity at the hotel.[50]

72. Several hundred traffickers and victims have been prosecuted by state and federal law enforcement agencies for sex trafficking and forced prostitution at Red Roof-branded properties.

73. Defendants were aware of the criminal activity and sex trafficking occurring at Red Roof Inn properties across the Country.

74. Upon information and belief, Defendants' upper-level executives monitored news stories and law-enforcements reports on criminal activities and sex trafficking occurring at Red Roof Inn properties across the country.

75. Upon information and belief, Defendants' public relation department issued

---

[46] Sarah Heise, *23 Arrested for Human Trafficking, Prostitution in San Joaquin County*, KCRA, (last visited April 15, 2025), https://www.kcra.com/article/23-arrested-in-san-joaquin-county-human-trafficking/9588063

[47] Justin Thompson-Gee, *Two Pastors Arrested for Sex Trafficking Children*, 58 News Milwaukee, (last visited April 15, 2025), https://www.cbs58.com/news/two-pastors-arrested-for-sex-trafficking-children

[48] Richard Webster, *Two Delaware Men Indicted on Charges of Child Sex Trafficking*, Ace News Today, (last visited April 15, 2025), https://www.acenewstoday.com/two-delaware-men-indicted-on-charges-of-child-sex-trafficking/

[49] Erick Payne, *Two People Face Charges for Involvement in Trafficking Ring*, WCIA, (last visited April 15, 2025), https://www.wcia.com/news/local-news/two-people-face-charges-for-involvement-in-trafficking-ring/

[50] Kylie McGlvern, *Motel 'Frequently Involved in Criminal activity' Sees More Than 200 Calls for service This Year,* ABC Action News, (last visited April 15, 2025), https://www.abcactionnews.com/news/motel-frequently-involved-in-criminal-activity-sees-more-than-200-calls-for-service-this-year

memorandums and communications regarding such criminal activities and sex trafficking occurring at Red Roof Inn properties across the country.

76. Upon information and belief, Defendants began monitoring customer feedback, including online reviews, in 2013 to look for instances of criminal activities and sex trafficking occurring at Red Roof Inn properties across the country.[51]

77. Upon information and belief, the Red Roof Inn Defendants compiled reviews from Reputology, an online aggregator, which provided feedback on locations nationwide, including Las Vegas Red Roof Inn. The Red Roof Inn Defendants and Defendant Paradise required employees to respond to reviews, particularly those that highlighted criminal activity or concerns related to trafficking.[52]

78. Based on the accumulation of public information, news reports, and online reviews, by the time Plaintiffs were trafficked at a Las Vegas Red Roof, Defendants, and each of them knew, or should have known, that:

   a. Sex trafficking was widespread and ongoing at Red Roof-branded properties, including the Las Vegas Red Roof Inn;

   b. Sex trafficking was a brand-wide problem for Defendants, originating from management level decisions at their corporate offices;

   c. Defendants failed to take reasonable steps to identify or address sex trafficking, which was actively occurring at the Las Vegas Red Roof Inn;

   d. Defendants' efforts, if any, to stop trafficking were ineffective at the Las Vegas Red Roof Inn;

   e. Defendants were earning revenue by providing venues where widespread and ongoing sex trafficking was occurring at the Las Vegas Red Roof Inn;

///

[51] Gary Stoller, *Plugged In: Red Roof Inn Adds Electric Outlets,* USA Today, (last visited April 15, 2025), https://www.usatoday.com/story/travel/hotels/2013/04/05/red-roof-hotel-outlets/2056817/

[52] *Use the New Hootsuite Reputology App to Monitor Online Reviews*, E-Marketing Associates, (last visited April 15, 2025), https://www.e-marketingassociates.com/blog/use-the-new-hootsuite-reputology-app-to-monitor-online-reviews

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

25

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

    f.    Defendants were earning revenue by turning a blind eye to the human trafficking occurring at the Las Vegas Red Roof Inn.

79.    Upon information and belief, Defendants, and each of them, understood the greater risks of prostitution and sex trafficking occurring in the Las Vegas area, due to its notoriety as a hub for prostitution, and being located next to a strip club.

80.    Upon information and belief, despite clear evidence that sex trafficking was occurring at Las Vegas Red Roof Inn, Defendants, and each of them, continued to earn revenue by continuing conduct that they knew or should have known would facilitate trafficking.

81.    Upon information and belief, the Red Roof Inn Defendants exercise comprehensive control over security and the reporting of criminal activities, including human trafficking, across their properties. Upon information and belief, Red Roof implemented a policy mandating staff at its branded locations, such as Las Vegas Red Roof, to report suspected criminal activities to corporate oversight. Red Roof implemented these safety and security measures by placing and monitoring security cameras, accepting and reviewing customer complaints, and inspecting the Las Vegas Red Roof Inn. Red Roof also collected data regarding hotel operations and customers, including names, payment information, reservation history, browsing data, and other details associated with their stay. Given Red Roof's retained control over security and criminal activity reporting, it had the responsibility and ability to monitor and address signs of illegal activities on their premises. Despite having the responsibility and the means to monitor and address these reports through various security measures, such as camera surveillance and customer data analysis, Red Roof failed to act on clear indicators of trafficking. This neglect facilitated the sex trafficking of individuals, including Plaintiffs.

82.    Upon information and belief, Red Roof Inn Defendants maintained control over the safety and security measures at its branded properties by implementing systems that directed customer complaints and reports of issues to Red Roof rather than the individual hotel locations, including Las Vegas Red Roof. Despite establishing these reporting mechanisms, Red Roof failed to take reasonable action in response to complaints of criminal activity and sex trafficking at its branded properties, including Las Vegas Red Roof.

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

83.     Upon information and belief, the Red Roof Inn Defendants retained control over property-specific and customer data from Las Vegas Red Roof by dictating the methods for recording, storing, and reporting this data. Through this control, Red Roof had actual or constructive knowledge of the ongoing trafficking occurring at Las Vegas Red Roof during the time Plaintiffs were trafficked there. Despite having access to detailed customer data, including guest names, payment information, and reservation history, Red Roof continued to facilitate trafficking at Las Vegas Red Roof by providing a venue and related services that enabled traffickers to profit from sexual exploitation with minimal risk of detection or interference.

84.     Upon information and belief, the Red Roof Inn Defendants knew or should have known that its involvement in a venture with their branded properties, including Las Vegas Red Roof, was in violation of 18 U.S.C. § 1591(a) by:

    a.  Upon information and belief, Red Roof Inn Defendants and Defendant Paradise entered into a venture to operate Las Vegas Red Roof Inn, with the shared objective of maximizing revenue and profits, while also sharing the risks associated with the hotel operations;

    b.  Upon information and belief, Red Roof Inn Defendants knowingly received a financial benefit from this venture in the form of franchising fees, royalty fees, and other payments from Las Vegas Red Roof Inn;

    c.  Upon information and belief, Red Roof Inn Defendants violated 18 U.S.C. § 1591(a)(1) by participating in the venture through the management of Las Vegas Red Roof and the acts and omissions of the staff at that location, thereby harboring trafficking victims and enabling sex traffickers;

    d.  Upon information and belief, Red Roof Inn Defendants knew or, through the exercise of reasonable diligence, should have known that it was engaging in violations of 18 U.S.C. § 1591(a). Red Roof Inn Defendants should have been aware of the trafficking activity at the Las Vegas Red Roof Inn, as it retained control over key aspects of the hotel's operations and, therefore, had a corresponding duty to act to prevent their profiting from the trafficking venture in

27

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

which it was participating. Despite this, Red Roof Inn Defendants continued to knowingly benefit from their relationship with Las Vegas Red Roof Inn, including the proceeds Red Roof obtained from the unlawful sex trafficking of Plaintiffs. Even after becoming aware of these violations, Red Roof continued providing Las Vegas Red Roof Inn with operational support, use of their trademarks, and other resources to operate Las Vegas Red Roof Inn in a way that Defendants knew or should have known was engaging in violations of 18 U.S.C § 1591(a).

e. Upon information and belief, Red Roof Inn Defendants knew, or should have known through the exercise of reasonable diligence, that it was engaging in violations of 18 U.S.C. § 1591(a). Red Roof retained control over relevant aspects of the operations at Las Vegas Red Roof and thus had a duty to monitor and address any illegal activity. Despite this responsibility, Red Roof continued to benefit from its relationship with the Las Vegas Red Roof Inn, including financial proceeds derived from unlawful sex trafficking. Even after becoming aware of these violations, Red Roof continued to provide operational support, use of its trademarks, and other resources to Las Vegas Red Roof, allowing it to operate in a manner that violated 18 U.S.C. § 1591(a).

f. Upon information and belief, there were times when the Red Roof Defendants obtained proof that they had profited from participating in a venture that violated the TVPRA yet they did not disgorge themselves of the benefits they received.

## THE SEX TRAFFICKING OF PLAINTIFF J.D.

85. Plaintiffs repeat and reallege each and every allegation contained above as though fully set forth herein.

86. By means of a combination of force, coercion, physical abuse, threats, manipulation, compelled use of and dependency on illegal substances, control over identification documents and possessions, and deprivation of basic survival necessities such as, but not limited to, food, water, transportation, shelter, and clothing, Plaintiff J.D.'s Traffickers forced her to have commercial sex for money.

28

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

87. Plaintiff J.D.'s trafficking occurred when she was twenty-one (21), between 2016 through 2020, beginning in Oakland, California. J.D. was an aspiring model, and one of her traffickers claimed he worked for a modeling agency. What initially appeared to be a promising professional relationship quickly devolved into one of manipulation, abuse, and control.

88. Plaintiff J.D. had a number of Traffickers[53], including one who has since been arrested and charged for Human Trafficking in San Jose, California.

89. Soon after Plaintiff J.D.'s trafficking began, she was regularly trafficked in Las Vegas, Nevada by a number of Traffickers, one of whom has since passed away.

90. During Plaintiff J.D.'s trafficking in Las Vegas, Plaintiff J.D. was coerced to perform various sexual services at the Las Vegas Red Roof Inn.

91. Plaintiff J.D.'s traffickers rented rooms at the Las Vegas Red Roof Inn because the location offered convenience, anonymity, and proximity to potential purchasers. At times, the traffickers forced or coerced Plaintiff J.D. to go inside and rent the room herself, while they waited nearby, often outside or just out of view, maintaining control over her and monitoring her actions.

92. Plaintiff J.D.'s traffickers found purchasers by advertising her on Skip The Games, an internet site listing independent escorts and adult service providers, while connected to Defendants' internet.

93. During her stay at the Las Vegas Red Roof Inn, Plaintiff J.D. was held against her will, forced to have sex with multiple purchaser's every day and was raped on numerous occasions.

94. During her stay at the Las Vegas Red Roof Inn, Plaintiff J.D. was repeatedly physically abused.

95. Plaintiff J.D. was repeatedly tied up, punched, slapped, and beaten—not only with fists, but also with household items, including the stick from the window blinds. At times, she was so disoriented from the abuse that she could not recall when or how certain injuries occurred. ///

---

[53] Plaintiff will provide the names of the traffickers to Defendants once a protective order is in place.

29

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

J.D. carries the physical consequences to this day, including permanent facial scarring and lasting internal damage, all from the repeated physical abuse she endured while trafficked.

96.     During her stay at the Las Vegas Red Roof Inn, Plaintiff J.D. was subjected to psychological torment, as her Traffickers withheld food and water, forced her to take illegal substances, abused her, and threatened with death or severe harm for being disobedient.

97.     J.D.'s traffickers maintained control through a relentless combination of violence, manipulation, and surveillance—placing trackers on her and surrounding her with individuals who monitored and reported her movements. The trauma has had lasting effects: including, J.D. now struggles with trust, experiences difficulty with intimacy, and continues to suffer from the psychological fallout of her exploitation.

98.     During her stay at the Las Vegas Red Roof Inn, Plaintiff J.D. engaged with numerous staff members of the Defendants, exhibiting multiple signs indicative of being under the control of her Traffickers. These interactions presented clear indicators of human trafficking that were easily recognizable.

99.     J.D. recalls being severely disoriented, both mentally and physically, during check-in and while staying at the Las Vegas Red Roof Inn. Despite these clear signs of distress, staff members not only ignored her condition but also proceeded to rent her a room. They made no effort to inquire about her well-being, contact law enforcement, or provide any assistance when she was clearly in distress.

100.    During her stay at the Las Vegas Red Roof Inn, Plaintiff J.D.'s Traffickers implemented a methodical and well-established operational protocol, consistent with practices widely recognized within the illicit sex trafficking industry, such as:

    a.  Plaintiff J.D.'s traffickers stayed at the Las Vegas Red Roof Inn in one-to-three-day cycles over the trafficking period, encountering the same staff, within the Trafficking Period.

    b.  An unusually high volume of individuals entered and exited Plaintiff J.D.'s room at frequent intervals;

///

30

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

c. Plaintiff J.D.'s Traffickers consistently refused housekeeping services, denying hotel staff entry to the room;

d. Plaintiff J.D.'s room exhibited an excessive quantity of used illicit drugs, prophylactics, soiled linens, and discarded clothing, indicative of commercial sexual activity.

e. Plaintiff J.D. was consistently accompanied by her Traffickers when entering the premises, displaying evident signs of distress, including evasive behavior, reticence, and visible fear.

f. Audible disturbances, including loud vocalizations and screams, emanated from Plaintiff J.D.'s room, suggestive of ongoing abuse and sexual assault.

g. Plaintiff J.D.'s Traffickers maintained possession and control of her legal identification documents and passport, utilizing these for room reservations at the Las Vegas Red Roof Inn.

h. Plaintiff J.D.'s Traffickers consistently utilized cash payments for room reservations at the Las Vegas Red Roof Inn, a common practice in sex trafficking operations;

i. Plaintiff J.D.'s Traffickers routinely requested accommodations in secluded areas of the hotel, away from other guests;

j. Plaintiff J.D.'s Traffickers made frequent and excessive requests for fresh linens and towels;

k. Plaintiff J.D. endured physical abuse in public areas of the Las Vegas Red Roof Inn;

l. An unusually large quantity of used prophylactics was consistently observed in Plaintiff J.D.'s Las Vegas Red Roof Inn room;

m. Plaintiff J.D.'s Traffickers repeatedly instructed hotel staff not to disturb the room occupants;

n. Plaintiff J.D. was often observed wearing attire inappropriate for the prevailing weather conditions;

31

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

o.   Instances of loitering and solicitation were observed at Plaintiff J.D.'s Las Vegas Red Roof Inn;

101.   Consequently, Defendants knew or should have known of Plaintiff J.D.'s trafficking at the Las Vegas Red Roof Inn, given the pervasive nature of sex trafficking indicators in the case of J.D. and those within the hospitality industry about which Defendants knew

102.   Despite the presence of numerous trafficking indicators that should have been recognizable to trained hospitality staff, employees and/or agents of Defendants placed Plaintiff J.D. in rooms isolated from other guests, further facilitating her exploitation.

103.   These indicators of human trafficking were conspicuous and readily apparent to any reasonably attentive employee at the Las Vegas Red Roof Inn. The prevalence and visibility of these warning signs, which align with widely recognized indicators within the hospitality industry, should have alerted properly trained staff to the ongoing exploitation at the Las Vegas Red Roof Inn.

104.   The failure to recognize and respond to these clear indicators of trafficking demonstrates a severe lapse in the hotel's duty of to exercise reasonable diligence and care and adherence to industry-standard practices for identifying human trafficking and halting Defendants continued profiting from the trafficking venture.

## THE SEX TRAFFICKING OF PLAINTIFF D.S.

105.   Plaintiffs repeat and reallege each and every allegation contained above as though fully set forth herein.

106.   By means of a combination of force, coercion, physical abuse, threats, manipulation, compelled use of and dependency on illegal substances, control over possessions, and deprivation of basic survival necessities such as, but not limited to, food, water, transportation, shelter, and clothing, Plaintiff D.S.'s Traffickers forced her to have commercial sex for money.

107.   Plaintiff D.S. was first trafficked at the age of twenty-three, between 2015 and 2018. She met her trafficker in Desert Hot Springs, California, through a friend of a friend. What ///

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

initially appeared to be a friendly relationship quickly devolved into one of manipulation, abuse, and control.

108. Soon after Plaintiff D.S.'s trafficking began, she was regularly trafficked in Las Vegas, Nevada by a number of traffickers, one of whom has since passed away.

109. During Plaintiff D.S.'s trafficking in Las Vegas, Plaintiff D.S. was coerced to perform various sexual services at the Las Vegas Red Roof Inn.

110. Plaintiff D.S.'s traffickers regularly rented rooms at the Las Vegas Red Roof Inn due to its convenience, anonymity, and proximity to potential buyers. They frequently checked in themselves and paid hotel staff to ignore the clear and obvious signs that D.S. was being trafficked on the premises. The traffickers explicitly told D.S. that staff had been paid to look the other way, using this information to further manipulate and control her.

111. Plaintiff D.S.'s traffickers found purchasers by advertising her on Skip The Games, an internet site listing independent escorts and adult service providers, as well as craigslist, while connected to Defendants' internet.

112. During her stay at the Las Vegas Red Roof Inn, Plaintiff D.S. was held against her will, forced to have sex with multiple purchaser's every day and was raped on numerous occasions.

113. While at the Las Vegas Red Roof Inn, Plaintiff D.S. was repeatedly beaten and drugged by her traffickers. She often regained consciousness to find her legs being forcibly held open as she was assaulted, before losing consciousness again. Her legs were frequently bruised and scratched, and she was locked in the room for extended periods without any means of escape.

114. During her stay at the Las Vegas Red Roof Inn, Plaintiff D.S. was subjected to psychological torment, as her traffickers withheld food and water, forced her to ingest unidentified substances, and repeatedly threatened her with death or serious harm if she disobeyed. The drugs left her disoriented and incapacitated, often causing her to black out for extended periods, unable to comprehend or resist what was happening. She does not know what substances were used—only that they were a method of control and subjugation. As a result of

///

33

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

the prolonged and repeated drugging, D.S. now suffers from lasting cognitive impairments and memory issues.

115. D.S.'s traffickers-maintained control through a relentless combination of violence, manipulation, and fear. The trauma she endured has had profound and lasting effects. She now struggles with trust, has difficulty with intimacy and forming relationships, and continues to suffer from the psychological aftermath of her exploitation. D.S. also experiences ongoing fear for her safety, often avoiding leaving her home due to a persistent sense that she could once again be forced into trafficking.

116. During her stay at the Las Vegas Red Roof Inn, Plaintiff D.S. engaged with numerous staff members of the Defendants, exhibiting multiple signs indicative of being under the control of her Traffickers. These interactions presented clear indicators of human trafficking that were easily recognizable.

117. D.S. recalls that while she was being trafficked at the Las Vegas Red Roof Inn, a hotel cleaning staff member entered the room and witnessed her being physically beaten by her trafficker. Rather than intervening or seeking help, the staff member turned around and continued with her work. Staff members not only ignored D.S.'s condition but also made no effort to inquire about her well-being, contact law enforcement, or provide any assistance when she was clearly in distress.

118. D.S. further recalls, on multiple occasions, cleaning staff knocked on the door, handed over towels, and walked away—despite observing multiple men entering and exiting the room, numerous individuals inside at once, visible alcohol, drugs, and several used condoms in plain view. These were obvious indicators that trafficking was occurring, yet staff members failed to act. They ignored her condition and continued to provide service as if nothing was wrong.

119. During her stay at the Las Vegas Red Roof Inn, Plaintiff D.S.'s Traffickers implemented a methodical and well-established operational protocol, consistent with practices widely recognized within the illicit sex trafficking industry, such as:

///

///

34

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

a. Plaintiff D.S.'s traffickers stayed at the Las Vegas Red Roof Inn in one-to-three-day cycles over the trafficking period, encountering the same staff, within the Trafficking Period.

b. An unusually high volume of individuals entered and exited Plaintiff D.S.'s room at frequent intervals;

c. Plaintiff D.S.'s traffickers generally declined full housekeeping services and limited staff access to the room; however, on multiple occasions, cleaning staff briefly entered to drop off towels and ignored clear indicators that Plaintiff D.S. was being trafficked.

d. Plaintiff D.S.'s room exhibited an excessive quantity of used illicit drugs, prophylactics, soiled linens, and discarded clothing, indicative of commercial sexual activity.

e. Plaintiff D.S. was consistently accompanied by her Traffickers when entering the premises, displaying evident signs of distress, including evasive behavior, reticence, and visible fear.

f. Audible disturbances, including loud vocalizations and screams, emanated from Plaintiff D.S.'s room, suggestive of ongoing abuse and sexual assault.

g. Plaintiff D.S.'s Traffickers consistently utilized cash payments for room reservations at the Las Vegas Red Roof Inn, a common practice in sex trafficking operations;

h. Plaintiff D.S.'s Traffickers routinely requested accommodations in secluded areas of the hotel, away from other guests;

i. Plaintiff D.S.'s Traffickers made frequent and excessive requests for fresh linens and towels;

j. Plaintiff D.S. endured physical abuse in public areas of the Las Vegas Red Roof Inn;

k. An unusually large quantity of used prophylactics was consistently observed in Plaintiff D.S.'s Las Vegas Red Roof Inn room;

l. Plaintiff D.S.'s Traffickers repeatedly instructed hotel staff not to disturb the room occupants;

m. Plaintiff D.S. was often observed wearing attire inappropriate for the prevailing weather conditions;

n. Instances of loitering and solicitation were observed at Plaintiff D.S.'s Las Vegas Red Roof Inn;

120. Consequently, Defendants knew or should have known of Plaintiff D.S.'s trafficking at the Las Vegas Red Roof Inn, given the pervasive nature of sex trafficking indicators in the case of D.S. and those within the hospitality industry about which Defendants knew.

121. Despite the presence of numerous trafficking indicators that should have been recognizable to trained hospitality staff, employees and/or agents of Defendants placed Plaintiff D.S. in rooms isolated from other guests, further facilitating her exploitation.

122. These indicators of human trafficking were conspicuous and readily apparent to any reasonably attentive employee at the Las Vegas Red Roof Inn. The prevalence and visibility of these warning signs, which align with widely recognized indicators within the hospitality industry, should have alerted properly trained staff to the ongoing exploitation at the Las Vegas Red Roof Inn.

123. The failure to recognize and respond to these clear indicators of trafficking demonstrates a severe lapse in the hotel's duty of to exercise reasonable diligence and care and adherence to industry-standard practices for identifying human trafficking and halting Defendants continued profiting from the trafficking venture.

## DEFENDANTS KNOWINGLY ENABLED AND PROFITED FROM THE SEX TRAFFICKING OF PLAINTIFFS

124. Plaintiffs repeat and reallege each and every allegation contained above as though fully set forth herein.

125. Defendants played a direct and significant role in facilitating the trafficking of Plaintiffs J.D. and D.S., at the Las Vegas Red Roof Inn.

126. Defendants knowingly benefited from the sex trafficking of Plaintiffs.

36

127. Defendants rented rooms to and provided internet to Plaintiffs' Traffickers when they knew, or should have known, that human trafficking was prevalent within its branded properties, including the Las Vegas Red Roof Inn.

128. Defendants benefited from the steady income generated by Plaintiffs' Traffickers and their purchasers. Defendants profited from every room rented by Traffickers and purchasers where Plaintiffs were harbored for sex trafficking.

129. When Defendants were made aware of their profits from sex trafficking they did nothing to disgorge themselves of the profits.

130. Defendants profited from the data it collected when Traffickers and purchasers used the Las Vegas Red Roof Inns internet to advertise and solicit Plaintiffs for commercial sex.

131. Defendants' employees, agents, and/or staff, particularly front desk employees, knew or should have known of the obvious signs of Plaintiffs J.D. and D.S., trafficking at the Las Vegas Red Roof Inn.

132. Given Defendants' access to various sources of information, such as police reports, news articles, complaints, prior convictions, and negative reviews regarding its properties, Defendants knew or should have known of the trafficking occurring at the Las Vegas Red Roof Inn, where Plaintiffs were trafficked.

133. Defendants knew or should have known of Plaintiffs' trafficking occurring at the Las Vegas Red Roof Inn, considering the city's reputation for sex trafficking. [54] [55] [56]

134. Defendants knew or should have known of Plaintiffs' trafficking occurring at the Las Vegas Red Roof Inn, due to the various clear signs of trafficking.

135. Defendants had multiple opportunities to stop the Traffickers who victimized Plaintiffs J.D. and D.S., instead, Defendants failed to take reasonable measures to stop profiting

---

[54] Jacquelyn Gray, *Why Sex Trafficking is Such a Big Problem in Las Vegas*, A&E, (last visited April 15, 2025), https://www.aetv.com/real-crime/sex-trafficking-in-las-vegas/
[55] Alyssa Bethencourt, *Las Vegas is a hotspot for human trafficking, here's how to spot signs*, KTNV-13, ABC, (last visited April 15, 2025), https://www.ktnv.com/news/las-vegas-is-a-hotspot-for-human-trafficking-heres-how-to-spot-signs/
[56] Stephanie Overton, *Las Vegas police arrest more than 70 in sex trafficking operation during Grand Prix week*, Channel 8 News, CBS, (last visited April 15, 2025), https://8newsnow.com/news/local-news/las-vegas-police-arrest-more-than-70-in-sex-trafficking-operation-during-grand-prix-week/

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

from the sex trafficking from at the Las Vegas Red Roof Inn. Red Roof's systematic willful blindness to the situation enabled and encouraged sex trafficking, and they financially benefited from the ongoing exploitation of Plaintiffs.

136.    Defendants continued to enjoy financial gain from their reputation for privacy, discretion, and their facilitation of commercial sex, knowing that these activities directly contributed to the trafficking of Plaintiffs.

137.    Defendants failed to take any meaningful steps to alert law enforcement, intervene in situations involving Plaintiffs' trafficking of which they knew or should have known, and failed to implement reasonable security measures to identify and to prevent their profiting from the human trafficking at the Las Vegas Red Roof Inn, including the sex trafficking of Plaintiffs.

138.    Defendants maintained these deficiencies intentionally to maximize profits, including by:

a. Reducing the cost of training employees, managers, and staff on how to identify human trafficking and sexual exploitation, and what steps should be taken when trafficking is suspected;

b. Failing to refuse room rentals or report guests to law enforcement, even when such guests were identified as likely sex traffickers or purchasers of sex, in order to maximize room occupancy and corresponding profits;

c. Cutting security costs by not employing qualified security personnel or maintaining proper video surveillance systems to monitor and combat human trafficking;

d. Failing to enforce proper policies and procedures to prevent and report human trafficking, including not holding accountable hotel staff or managers who were complicit in facilitating trafficking activities.

139.    Despite having access to extensive information regarding sex trafficking indicators and the conspicuous signs of Plaintiffs' exploitation at the Las Vegas Red Roof Inn, Defendants failed to implement appropriate measures to intervene and prevent their profiting from the trafficking of Plaintiffs. This inaction persisted despite widespread industry awareness of

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

trafficking risks, publicly available guidelines for prevention, and the presence of numerous red flags that aligned with recognized indicators of human trafficking within the hospitality sector.

140.    Defendants consistently failed to take necessary actions to prevent their profiting from the exploitation occurring at the Las Vegas Red Roof Inn. Specifically, Defendants failed to:

    a.    Mandate comprehensive training for employees and managers on identifying signs of human trafficking and sexual exploitation;

    b.    Analyze data on criminal activity and customer reviews indicating trafficking at their properties, and take corrective actions to address these issues;

    c.    Collect and utilize vast amounts of data from their locations for marketing purposes but fail to apply the same data to combat trafficking in their hotels;

    d.    Refuse room rentals or report suspicious guests to law enforcement, prioritizing maximum occupancy rates over the safety of trafficking victims;

    e.    Monitor and track guest wireless network activity for signs of illicit commercial sex or human trafficking-related digital activity;

    f.    Implement adequate security measures, such as qualified security personnel and appropriate cybersecurity, to combat trafficking and sexual exploitation;

    g.    Use their influence as a parent company to hold franchisees accountable for the trafficking occurring on their properties.

141.    Defendants' deliberate failure to intervene and its ongoing facilitation of sex trafficking at the Las Vegas Red Roof Inn directly enabled the continued victimization of Plaintiffs and their continued profits from that victimization.

142.    Defendants knew or should have known of the persistent sex trafficking occurring within their establishments. Instead of implementing prompt and effective measures to combat this crisis, they deliberately turn a blind eye to the blatant signs of exploitation. This willful ignorance allows them to continue profiting from room rentals clearly used for illicit purposes. By failing to address this issue, Defendants prioritize their financial gains over the safety and

///

well-being of trafficking victims, effectively enabling the continuation of these criminal activities on their premises.

143. As a result, Plaintiffs have suffered severe emotional distress, humiliation, mental anguish, and physical pain and suffering, as well as a substantial loss of enjoyment of life. Furthermore, Plaintiffs have incurred and will continue to incur medical expenses, attorney's fees, lost wages, diminished earning capacity, and punitive damages, all in an amount to be determined at trial.

## FIRST CLAIM FOR RELIEF

### (Violations of 18 U.S.C. 1595 ("TVPRA"))

### Against all Defendants

144. Plaintiffs repeat and reallege each and every allegation contained above as though fully set forth herein.

145. Plaintiffs J.D. and D.S., are victims of sex trafficking within the meaning of 18 U.S.C. § 1591(a) and are entitled to bring a civil action under 18 U.S.C. § 1595.

146. Defendants are liable under 18 U.S.C. § 1595(a) because in the ways described above, Defendants knowingly or recklessly participated in harboring, maintenance, and/or other acts in furtherance of sex trafficking, including the sex trafficking of Plaintiffs. Defendants, and each of them, knowingly benefitted, by receiving financial and other compensation, through their participation in a venture that they knew or were reckless in not knowing involved the trafficking, harboring, and maintenance of sex trafficking victims in exchange for financial benefits.

147. Defendants' acts, omissions, and commissions, taken separately and/or together, outlined above, constitute a violation of 18 U.S.C. § 1595. Specifically, Defendants, and each of them, had a statutory obligation not to benefit financially or receive anything of value from a venture that they knew, or should have known, engaged in violating the TVPRA. At all relevant times, Defendants, and each of them, failed to behave as reasonably diligent corporations and breached this duty through their participation in the harboring, maintaining, soliciting, and advertising Plaintiffs and their traffickers for the purpose of commercial sex induced by force, fraud, or coercion.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

148.    Defendants knew or should have known of the persistent sex trafficking occurring within their establishments. Instead of implementing prompt and effective measures to combat this crisis, they deliberately turn a blind eye to the blatant signs of exploitation. This willful ignorance allows them to continue profiting from room rentals clearly used for illicit purposes. By failing to address this issue, the hotels prioritize their financial gains over the safety and well-being of trafficking victims, effectively enabling the continuation of these criminal activities on their premises.

149.    Defendants, and each of them benefited as a result of these acts, omissions, and/or commissions by renting rooms and providing internet/Wi-Fi to traffickers and customers, keeping operating costs low, maintaining the loyal customer base that fuels the supply and demand of sex trafficking, and limiting mandatory regulations. Moreover, on each occasion they received payment for rooms, Defendants directly benefited from the sex trafficking of Plaintiffs when they knew or should have known violations of §1591(a) were occurring. Defendants have never disgorged themselves of the profit even though they admit they have profited from sex trafficking in the Red Roof branded properties.

150.    Defendants, and each of them, have participated in a hotel business venture and/or a sex trafficking venture in which they knowingly benefited from the commercial sex trafficking of Plaintiffs J.D. and D.S., who were trafficked as a direct result of Defendants' acts, omissions, and/or commissions. In order to maintain the loyalty of the segment of their customer base involved in the sex trade, Defendants continued renting rooms to traffickers, failing to intervene despite obvious signs of trafficking. Defendants' failure to properly train and supervise their agents and employees, coupled with their disregard for the welfare of their guests, enabled the continued exploitation of Plaintiffs.  The Red Roof Defendants, Paradise Defendant and Plaintiffs' traffickers engaged in a venture in which all were necessary parties to obtain the profits from the sex trafficking of Plaintiffs.

151.    Moreover, Defendants, and each of them, knowingly and directly benefited from the sex trafficking of Plaintiffs J.D. and D.S., on each occasion they received payment for rooms where Plaintiffs were sexually exploited by guests of the hotel.

41

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

152. Plaintiffs further allege that, as a result of the relationship between Red Roof Inn Defendants and their branded properties, Red Roof Inn Defendants are vicariously liable for the acts of their branded properties, including at Las Vegas Red Roof Inn.

153. Defendants' conduct, as set forth above and with respect to this cause of action was done with a conscious disregard for Plaintiffs' rights and safety, fully aware of the devastating and probable consequences of their conduct. This conduct included the willful and deliberate failure to act to prevent those consequences, justifying an award of punitive damages. Specifically, despite Defendants' knowledge of widespread sex trafficking occurring at the Las Vegas Red Roof Inn, Defendants made the deliberate decision to continue profiting from the exploitation of vulnerable individuals. Their failure to implement or enforce any meaningful policies to prevent trafficking and the profits from trafficking, failure to train or supervise employees, and complete indifference to the obvious signs of exploitation on their premises, demonstrate a deliberate, reckless, and malicious disregard for Plaintiffs' well-being. Defendants knew of the harm being caused, failed to take corrective action, and instead chose to perpetuate the suffering of Plaintiffs for their own financial gain. This egregious and malicious conduct justifies the imposition of punitive damages, as Defendants' actions were not only intentional but meant to foster a system of exploitation.

154. Defendants' conduct as set forth above, and with respect to this cause of action exhibited implied malice towards Plaintiffs' rights and safety. This conduct was despicable and demonstrated a conscious disregard for Plaintiffs' rights and safety, warranting an award of punitive damages. Specifically, Defendants, and each of them, were fully aware, or should have been fully aware, that sex trafficking was rampant at the Las Vegas Red Roof Inn, and yet they chose to do nothing to prevent it. They ignored clear signs of trafficking, failed to intervene in the face of overwhelming evidence, and continued to allow the exploitation of vulnerable individuals to take place under their roof—all while reaping the financial rewards. This behavior, done with malice and a total lack of concern for the human suffering occurring on their premises, warrants the imposition of punitive damages to punish Defendants for their despicable conduct and deter others from engaging in similar conduct in the future.

CHRISTIAN MORRIS TRIAL ATTORNEYS
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

155. The conduct, actions, and omissions by Defendants, and each of them were negligent, grossly negligent, intentional, willful, wanton, oppressive, malicious, and done with conscious disregard to the rights and safety of Plaintiffs.

156. The totality of Defendants' actions and omissions demands punitive damages of a magnitude sufficient to punish this egregious conduct and deter similar behavior across the hospitality industry. The scale of these damages should reflect the prolonged nature of Defendants' misconduct, spanning years of inaction and willful ignorance, the severity of harm inflicted on multiple victims due to Defendants' failure to act, the substantial profits Defendants repeated from the complicity in human trafficking, and the need to send a clear message to the entire hospitality industry that such conduct will not be tolerated and will result in severe financial consequences.

157. The necessity for exemplary punitive damages is further amplified by the unique position of Las Vegas, Nevada in the hospitality industry. As the hospitality capital of the world, Las Vegas sets standards and practices that reverberate throughout the global hospitality sector. The high concentration of hotels and casinos in Las Vegas creates an environment where unchecked trafficking can proliferate rapidly, magnifying the impact of corporate negligence. Therefore, punitive damages must be of a magnitude that not only punishes Defendants but also serves as a watershed moment for the entire hospitality industry, compelling immediate and comprehensive reforms in Las Vegas that will set new global standards for combating sex trafficking in hotels.

158. After escaping their traffickers, Plaintiffs J.D. and D.S., have spent significant time and effort trying to rebuild their lives, which were violently torn away. The lasting trauma from their captivity and abuse continues to affect them, serving as a constant reminder of the Defendants' role in enabling their exploitation.

159. As a direct and proximate result of the acts or omissions of Defendants, and each of them, Plaintiffs J.D. and D.S., have suffered severe emotional distress, humiliation, mental anguish, psychological trauma, and physical pain and suffering, and a significant decrease in their ability to enjoy life, all in excess of Fifteen Thousand Dollars ($15,000.00).

160.    As a direct and proximate result of the acts or omissions of Defendants, and each of them, Plaintiffs J.D. and D.S., have incurred medical expenses for the treatment of their injuries and may require ongoing future treatments necessitated by the harm they suffered. The exact amount of such past and future damages is unknown at this present time, but Plaintiffs allege that they have suffered and/or will suffer damages in excess of Fifteen Thousand Dollars ($15,000.00).

161.    As a direct and proximate result of the acts or omissions of Defendants, and each of them, Plaintiffs J.D. and D.S., have suffered loss of income and/or loss of earning capacity, all in excess of Fifteen Thousand Dollars ($15,000.00).

162.    The actions and inactions of Defendants', their officers, agents, servants, and employees, directly and foreseeably caused Plaintiff to suffer these damages. Plaintiff is therefore entitled to compensation for all such damages, including but not limited to past and future medical expenses, therapy costs, lost enjoyment of life, and pain and suffering, in an amount to be proven at trial.

163.    As a direct and proximate result of the acts or omissions of Defendants, and each of them, Plaintiffs J.D. and D.S., have had to retain the services of the law offices of CHRISTIAN MORRIS TRIAL ATTORNEYS to pursue this action and are entitled to recover costs of suit and reasonable attorney's fees incurred herein.

## **TOLLING OF LIMITATIONS**

164.    To the extent that Defendants assert an affirmative defense of limitations, Plaintiffs invoke the discovery rule. At the time they were harmed and through the end of their trafficking, they were under the coercion and control of their traffickers who exercised coercive control over them and severely restricted her freedom.  As a result, Plaintiffs lacked the information and capacity to understand their injuries and their legal causes.

165.    At the time Plaintiffs were harmed, they did not know that they were the victims of human trafficking as that term is defined by law, that their injuries arose from being "trafficked" at Defendants' hotel or that they were people "trafficked," much less that they were the "victims" of a legal venture and conspiracy involving Defendants, and they did not discover and were not in a position to discover the legal cause of her injury until close to the time they

CHRISTIAN MORRIS TRIAL ATTORNEYS

2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

filed this case.

166.    To the extent Defendants assert an affirmative defense of limitations, Plaintiffs invoke the doctrine of equitable tolling because, as a result of being a victim of trafficking, Plaintiffs faced extraordinary circumstances, which arose through no fault of their own, that prevented them from filing a lawsuit.

176.    While under the control of their traffickers Plaintiffs did not have the freedom to investigate their claims, to identify those responsible, or to seek legal representation necessary to pursue their legal rights. Plaintiffs could not have pursued their claims while under the active control of their traffickers despite the exercise of ordinary diligence.

177.    To the extent Defendants assert an affirmative defense of limitations, Plaintiffs invoke the continuing violation doctrine because this lawsuit arises out of a pattern of continuous and ongoing tortious conduct by Defendants, individually and in concert.

178.    This continuous trafficking resulted from Defendants' facilitation of trafficking at the subject property and Defendants' ongoing ventures with one another and with criminal traffickers at the Red Roof Inn property at issue in this case.

**WHEREFORE**, PLAINTIFFS J.D. and D.S., pray for judgment against Defendants as follows:

1.  For general and special damages in excess of $75,000.00 for medical expenses, pain and suffering, permanent injury, disfigurement, anguish and afear, and lost wages.

2.  For punitive damages;

3.  For any and all pre- and post-judgment interest as permitted by law;

4.  For reasonable attorney's fees and costs;

5.  For such other and further relief as the Court Deems proper.

///

///

///

///

**CHRISTIAN MORRIS TRIAL ATTORNEYS**
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
P: 702-434.8282 | F: 702-434.1488

## DEMAND FOR JURY TRIAL

Pursuant to F.R.C.P. 38, Plaintiffs hereby demand trials by jury on all issues raised in this action.

DATED this __ day of February 2026.

CHRISTIAN MORRIS TRIAL ATTORNEYS

/s/ *Sarah E. DiSalvo*

CHRISTIAN M. MORRIS, ESQ.
Nevada Bar No. 11218
SARAH E. DISALVO, ESQ.
Nevada Bar No. 16398
LINDSAY N. ROGINSKI, ESQ.
Nevada Bar No. 16616
2250 Corporate Circle, Suite 390
Henderson, Nevada 89074
*Attorneys for Plaintiffs*